IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2018

**IN RE ESTATE OF JESSE L MCCANTS SR**

**Appeal from the Chancery Court for Hamilton County**
**No. 13-P-610 Jeffrey M. Atherton, Chancellor**

_____

**No. E2017-02327-COA-R3-CV**

_____

This appeal concerns exceptions that were made to a "final accounting" offered by the personal representative during probate proceedings. After the exceptions were made, an order of reference was entered by the trial court directing the Clerk and Master to hear proof and report her findings. The Clerk and Master determined that a number of expenses incurred by the personal representative in relation to a particular piece of real property should not be allowed because the expenses were made outside the four-month period outlined in Tennessee Code Annotated section 30-2-323. Upon reviewing the Clerk and Master's report for questions of law arising therefrom, the trial court held that the report had "properly identified" Tennessee Code Annotated section 30-2-323 as limiting what expenses could be charged to the estate. For the reasons stated herein, the trial court's approval of the Clerk and Master's report is reversed in part and affirmed in part, and the case is remanded for further proceedings consistent with this Opinion. Specifically, we hold that the trial court erred in disallowing expenses incurred by the personal representative during a period of time when the real property at issue was titled in the name of the estate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Samuel J. Gowin, Chattanooga, Tennessee, for the appellant, Janella L. McCants.

Jacinta L. McGavock, Jesse L. McCants, Jr., and Jerel L. McCants, Appellees.[1]

_____
[1] The Appellees did not file a brief in this appeal.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On August 13, 2013, Jesse McCants, Sr. ("the Decedent"), passed away at the age of 77. The Decedent left a will that provided for the distribution of his property to his wife and four children. At the time of the Decedent's death, however, the only surviving beneficiaries under his will were his children. His wife predeceased him on June 26, 2013.

In September 2013, one of the Decedent's children, the Appellant Janella McCants ("Ms. McCants"), filed a "Petition for Testate Administration" in the Hamilton County Chancery Court. Among other things, Ms. McCants' petition requested that she be appointed as executrix of the estate, and she noted that the Decedent's other children had already signed a document agreeing for her to serve in such a role. On September 17, 2013, letters testamentary were issued to Ms. McCants.

Notice of the Decedent's death was subsequently published in the Chattanooga Times Free Press, and a number of claims were soon asserted against the estate. One of these, a claim filed by Bank of America, was denied. The other claims, asserted by Memorial Hospital and First Tennessee Bank, were withdrawn and paid, respectively.

In September 2014, Ms. McCants filed a "final accounting" with the trial court. The accounting identified receipts and disbursements that were associated with the estate's checking account and proposed to distribute the remainder of estate funds to beneficiaries after attorney's fees and personal representative fees were paid from the balance. The following year, in February 2015, a motion was filed by Ms. McCants and the attorney for the estate seeking "compensation . . . for attorney's fees and Personal Representative's fees."

The record reflects that after Ms. McCants submitted her September 2014 accounting, the Decedent's other children excepted to it. Among other things, they contended that Ms. McCants should not receive a credit for a number of expenses that were made in connection with a particular piece of real property. The propriety of these objections to the accounting, along with the issue of attorney's fees and personal representative fees, was subsequently referred to the Clerk and Master by way of an order entered in March 2015.

Following the order of reference, the Clerk and Master issued a report in July 2017 and reached conclusions on a number of issues. In addition to approving attorney's fees and personal representative fees, the Clerk and Master held that unapproved amounts in connection with the accounting totaled over $14,000.00. Many of the disallowed expenses related to Ms. McCants' upkeep of a parcel of real property located at 4710

Cordelia Lane. In concluding that many of these expenses should not have been paid by the estate, the Clerk and Master reasoned as follows:

> Pursuant to T.C.A. § 30-2-323, the Personal Representative is authorized to pay for expenses related to the upkeep of real property passing through the Estate for four (4) months following the Decedent's death, but these expenses "shall not include mortgage note payments, real estate taxes, major repairs or other extraordinary expenses." In the present case, the four-month period ended on December 13, 2013. Therefore, any expenses made towards the home located at 4710 Cordelia Lane in Chattanooga, Tennessee, after December 13, 2013, are improper.

As discussed below, it should be noted that the above-mentioned property at Cordelia Lane was not actually owned by the Decedent at his death. The record indicates that it was instead owned by McCants Development Company, Inc., of which the Decedent was the sole shareholder. The record further reflects that following the Decedent's death, the home was transferred from the corporation to the estate. It was then eventually transferred to the Decedent's children in April 2014 by Executor's deed.

Ms. McCants objected to the Clerk and Master's report, and in August 2017, the trial court held a hearing as to questions of law arising from the report.[2] Although the resulting order in the trial court affirmed the Clerk and Master's recommendation as to the attorney's fees and personal representative fees that should be approved, the trial court modified the amount of identified expenses that should not be allowed. Under the trial court's order, the amount of unapproved expenses was reduced to $6,527.55. The trial court did not disturb, however, the Clerk and Master's conclusion regarding the expenses related to the Cordelia Lane property. In relevant part, the trial court stated as follows:

> The Master's Report properly identified T.C.A. § 30-2-323, which authorizes the Executrix to pay for expenses related to property passing through the Estate up to four months after the Decedent's death. In order for the Estate to pay for expenses beyond four months, the Executrix must seek permission from the Court.

> In this case, the four-month period after the Decedent's death ended on December 13, 2013. The Executrix never sought approval from the Court for expenses related to the Property after December 13, 2013.

---

[2] It had previously been stipulated that the "findings" of the Clerk and Master would be conclusive.

- 3 -

Although Ms. McCants thereafter requested that the trial court amend its order regarding the unapproved expenses, her request for relief was denied, leading to the filing of the present appeal.

## ISSUES PRESENTED

Ms. McCants' appellate brief challenges the trial court's conclusions regarding the propriety of her siblings' exceptions to her accounting. Specifically, she seeks a determination that $6,087.00 of the expenses related to the Cordelia Lane property, which were disallowed by the trial court, were reasonably paid out of the estate account.[3]

## DISCUSSION

### I.

Before reviewing the merits of any appeal, Rule 13(b) of the Tennessee Rules of Appellate Procedure mandates that we first consider whether we have jurisdiction over the subject matter of the case. Tenn. R. App. P. 13(b); *Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *2 (Tenn. Ct. App. May 7, 2010). In fulfilling this duty, we are required to, among other things, consider whether the order appealed from is a final judgment. Indeed, it is well-settled law that, "[u]nless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (citation omitted); *see also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (noting that an appeal as of right may be taken only after the entry of a final judgment). A final judgment is one that completely defines the parties' rights and leaves nothing else for the trial court to do. *Davis v. Davis*, 224 S.W.3d 165, 168 (Tenn. Ct. App. 2006) (citation omitted). An order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final. *In re Estate of Henderson*, 121 S.W.3d at 645.

Without question, our courts have previously recognized the difficulty of applying the final judgment rule to probate proceedings. *In re Estate of Schorn*, No. E2013-02245-COA-R3-CV, 2015 WL 1778292, at *7 (Tenn. Ct. App. Apr. 17, 2015) (citation omitted). This is in large part due to the fact that probate proceedings frequently contain multiple intermediate orders that are final with respect to discrete issues. *See id.* (citation omitted). As such, an order is appealable in many instances notwithstanding the fact that the probate case has not definitively concluded. For example, when a claim filed against the estate is tried and resolved, "[a] party dissatisfied with the outcome of a trial

---

[3] It should be noted that Ms. McCants does not challenge the trial court's disallowance of certain expenses on appeal. As previously indicated, the trial court had concluded that the unapproved expenses were in the amount of $6,527.55.

regarding a disputed claim must file a timely appeal without waiting for a final order closing the probate proceeding." *In re Estate of Trigg*, 368 S.W.3d 483, 497 (Tenn. 2012) (citation omitted). Moreover, our Supreme Court has held that orders construing a will are final and appealable, as are orders that reject wills submitted for probate and find that the deceased died intestate. *See In re Estate of Ridley*, 270 S.W.3d 37, 42 (Tenn. 2008); *In re Estate of Henderson*, 121 S.W.3d at 647. However, this Court has held that an appeal from an interim accounting must be dismissed for lack of jurisdiction. *See In re Estate of Schorn*, 359 S.W.3d 192, 197 (Tenn. Ct. App. 2011). We further note that under Tennessee Code Annotated section 30-2-609, a party affected by a trial court's settlement is entitled to appeal when the court having probate jurisdiction "finally settles" an account. Tenn. Code Ann. § 30-2-609.

Here, it appears that, at least from a technical perspective, the order appealed from should not be considered a final judgment. Although the appeal stems from the trial court's resolution of exceptions to Ms. McCants' "final accounting," it appears that there has never truly been a final settlement. The accounting offered by Ms. McCants actually reflected that funds still remained in the estate's checking account, and there is no indication that there has been a final distribution of the remaining estate funds. Further, we observe that the order appealed from did not even purport to close the estate or discharge Ms. McCants of her duties.

Despite the apparent absence of a final settlement, we are of the opinion that a dismissal of this appeal would be unwarranted. As noted in past decisions, Rule 2 of the Tennessee Rules of Appellate Procedure permits us to suspend the final judgment requirement in our discretion if we find "good cause" to do so. *See In re Estate of Schorn*, 2015 WL 1778292, at *7; *In re Estate of Goza*, No. W2013-02240-COA-R3-CV, 2014 WL 7246509, at *5 (Tenn. Ct. App. Dec. 19, 2014). We have previously exercised such discretion when it was determined that judicial economy would be best served by addressing the issues on their merits in the pending appeal. *In re Estate of Goza*, 2014 WL 7246509, at *5. Because we are of the opinion that dismissal of this appeal would unduly delay resolution of the discrete issue among the parties regarding the specific expenses disallowed by the trial court, we suspend the finality requirements of Rule 3 of the Tennessee Rules of Appellate Procedure and proceed to provide a decision on the merits.

## II.

At issue here is whether Ms. McCants' payments for utilities, repairs, and maintenance of the Cordelia Lane property were properly made from estate funds. Narrowly, the specific issue is whether Tennessee Code Annotated section 30-2-323 barred Ms. McCants from making such payments, because as we have already noted, that statute was cited by the Clerk and Master as the basis for disallowing the payments at issue. The trial court, of course, did not disturb the Clerk and Master on this point of law,

concluding that the Clerk and Master had "properly identified" the statute as a basis for disallowing the expenses claimed.[4]

In order to address the question before us on appeal, we begin our discussion by briefly highlighting some of the responsibilities of a personal representative and by detailing some of the constraints typically faced when acting on behalf of an estate. The personal representative serves an important role in probate administration and owes the estate a duty of good faith and diligence in amassing and preserving assets. *Wood v. Lowery*, 238 S.W.3d 747, 758 (Tenn. Ct. App. 2007). As we have previously noted:

> In the custody, management, and disposition of the estate committed to his charge, as in the collection of the assets, the representative is bound to perfect good faith, and to the exercise of that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business man would employ in the management of his own affairs of a similar nature[.]

*In re Estate of Inman*, 588 S.W.2d 763, 767 (Tenn. Ct. App. 1979) (quoting *Pritchard on Wills and Administration of Estates*, § 695 (3d ed. 1955)).

---

[4] In addition to affirming the propriety of the Clerk and Master's reliance on Tennessee Code Annotated section 30-2-323, the trial court stated as follows: "Further, as the Executrix was and still remains the sole occupier of the Property, the expenses incurred after December 13, 2013, did not inure to the benefit of the Estate as a whole." From our review of the record, it appears the trial court's finding in this regard was based on either one of two things. First, we observe that in the trial court's order, the trial court noted that an attorney for Ms. McCants' siblings had argued, at the hearing where the Clerk and Master's report was reviewed, that "the Executrix was and still remains the only beneficiary who resides at the Property." With respect to this matter, we would note that arguments of an attorney should not be considered evidence. *Oakes v. Oakes*, 235 S.W.3d 152, 158 (Tenn. Ct. App. 2007) (citation omitted). Second, we note that the record suggests that, in a separate lawsuit, there had been a determination of ouster concerning the property, leaving Ms. McCants liable for rent effective July 2014. To the extent that the trial court was relying on these apparent findings from another lawsuit (we note that counsel for Ms. McCants' siblings attached a purported copy of the judgment from the other lawsuit in a response in support of the Clerk and Master's report), a few comments are in order. Initially, we note that in the other lawsuit, ouster was evidently established in June 2014, after the Cordelia Lane property had been transferred from the estate to the children beneficiaries. This appeal is concerned with expenses incurred before the Cordelia Lane property transferred out of the estate. In any event, the judgment offered from the other lawsuit was apparently entered after the Clerk and Master's report. In this case, the parties stipulated to the findings of the Clerk and Master, and the trial court's review was supposed to be limited to questions of law arising from the Clerk and Master's report. The opening of the trial court's order even states as such, quoting the provision in Tenn. R. Civ. P. 53.04(4), which provides, "when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered." Whether the trial court was considering the previously-mentioned statement of counsel (which is not actually evidence) or was relying on the finding of ouster from the other lawsuit, it was not proper to establish a factual predicate not found by the Clerk and Master in order to provide an alternative basis for denying relief. Again, as noted above, only questions of law arising from the report were to be considered.

Generally speaking, it should be noted that a personal representative's power to manage a decedent's real property is severely circumscribed. As our Supreme Court has explained, "title to real property owned by a testate decedent at the time of death vests immediately in the devisees named in the will unless the will specifically directs that the property be part of the estate under the control of the executor." *In re Estate of Trigg*, 368 S.W.3d at 501 (citations omitted). Thus, the default understanding under the law is that a decedent's real property is not subject to administration as part of the probate estate. However, even if a decedent's will does not specifically direct that a specific piece of real property be brought into the probate estate for administration, the personal representative still has the authority to deal with such real property in certain circumstances. For example, "if the decedent's personal property is insufficient to pay the debts of the estate, the personal representative has the right to use real property passing through devise or descent to discharge such debts." *In re Estate of Vincent*, 98 S.W.3d 146, 149 (Tenn. 2003) (citing Tenn. Code Ann. § 31-2-103). Another exception to the traditional understanding is found in Tennessee Code Annotated section 30-2-323, which provides as follows:

> Unless contrary to the decedent's will, the personal representative of the estate is authorized, but not required, to advance or to pay as an expense of administration for a period of up to four (4) months after the decedent's death the reasonable costs of routine upkeep of any real property passing under the will of the decedent or by intestate succession. These authorized expenditures, which may be made in the personal representative's discretion, shall include those for utility services, day-to-day maintenance, lawn service, and insurance premiums but shall not include mortgage note payments, real estate taxes, major repairs or other extraordinary expenses. None of the foregoing limitations shall apply to any real property that is actually part of the probate estate being administered.

Tenn. Code Ann. § 30-2-323. In essence, this statute provides the personal representative with a source of authority, unless contrary to the decedent's will, to prevent waste of real property that might otherwise occur before the ultimate takers are proved and notified of their legal responsibilities as property owners. *See* Dan Holbrook, *The Curious Meaning of Words: Vesting of Title in Probate Estate*, 38 Tenn. B.J. 26 (2002).

In this case, the payments at issue which were made for utilities and maintenance on the home were disallowed because the Clerk and Master and trial court noted that they had been made outside the four-month period in Tennessee Code Annotated section 30-2-323. Respectfully, we are of the opinion that this legal conclusion, which we must review de novo and accord no presumption of correctness, *Blankenship v. Blankenship*, 59 S.W.3d 115, 117 (Tenn. Ct. App. 2001), was in error. Initially, we note that the text of Tennessee Code Annotated section 30-2-323 specifically states that its limitations shall *not* apply "to any *real property* that is *actually part* of the probate estate being

administered." Tenn. Code Ann. § 30-2-323 (emphases added). Here, the real property at issue did not vest immediately in the will's beneficiaries and pass outside of the administration of the probate estate. Although that result typically obtains for real property that is owned by a testator, *see* Tenn. Code Ann. § 31-2-103 ("The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative."), the Decedent did not own the Cordelia Lane residence at his death. As previously noted, the property was instead owned by a corporation of which he was the sole shareholder. "[T]hat one owns all the stock of a corporation does not make him the owner of its property." *Hinton v. Carney*, 250 S.W.2d 364, 365 (Tenn. 1952) (citations omitted). Moreover,

> [t]he ownership of a share of stock, so far as the property of the corporation is concerned, is but the ownership of the right to participate from time to time in the net profits of the business, and upon the dissolution of the corporation to a proportion of the assets after the payment of the corporate debts. It is personal property which upon the death of the owner goes to his administrator, although the entire capital of the corporation may consist of real estate.

*Id.* at 366 (quoting *Bradley v. Bauder*, 36 Ohio St. 28 (Ohio 1880)). The Decedent's ownership of 100% of the stock of the corporation that owned the Cordelia Lane residence was personal property that became part of the probate estate upon his death. Title to the real property was subsequently transferred from the corporation to the estate, and Ms. McCants acted properly to preserve and maintain the residence *while it was owned by the estate* until title was later transferred to the children beneficiaries. The four-month period identified by the Clerk and Master and trial court simply did not apply under the facts of this case; as just suggested, some of the expenses at issue were incurred while the residence was titled in the name of the estate.

Nor does the four-month period apply irrespective of whether real property is administered as part of the probate estate. We specifically note this because both the Clerk and Master and trial court appeared to have suggested otherwise. Indeed, it appears that the result in the proceedings below may have been the result of a misunderstanding that the time restriction contained in Tennessee Code Annotated section 30-2-323 applies to real property that is actually part of the probate estate being administered. Consider the following two sentence excerpts, which are taken from the report of the Clerk and Master and order of the trial court, respectively:

> Pursuant to T.C.A. § 30-2-323, the Personal Representative is authorized to pay for expenses related to the upkeep of real property *passing through the Estate* for four (4) months following the Decedent's death[.]

The Master's Report properly identified T.C.A. § 30-2-323, which authorizes the Executrix to pay for expenses related to property *passing through the Estate* up to four months after the Decedent's death.

(emphases added). From our reading, it appears that the Clerk and Master and trial court were under the impression that real estate actually passing through the estate for probate administration could not be acted upon by the personal representative unless such action took place within the four months immediately following the decedent's death. This is not an accurate reading of the scope of the statute. The statute operates to allow a personal representative to pay expenses of administration with respect to real property "passing under the will of the decedent or by intestate succession." Tenn. Code Ann. § 30-2-323. In other words, it outlines a scenario where real property can be subject to estate administration where it traditionally could not be. Of course, property that passes through the estate subject to probate administration does so without reference to the statutory four-month period relied upon in the proceedings below. To hold otherwise would be to run afoul of the specific explanatory directive included in Tennessee Code Annotated section 30-2-323. *See id.* ("None of the foregoing limitations shall apply to any real property that is actually part of the probate estate being administered.").

As noted above, Ms. McCants acted properly to preserve and maintain the residence while it was owned by the estate, and the trial court erred in disallowing the expenses associated with that period. Notwithstanding our conclusion with respect to this issue and the trial court's misapplication of the four-month period in Tennessee Code Annotated section 30-2-323, many of the expenses disallowed by the trial court should not ultimately be disturbed. Although Ms. McCants certainly had the authority to preserve the Cordelia Lane residence with funds of the estate during the period of time that it was titled in the name of the estate, it should be noted that many of the expenses at issue were incurred when the residence was owned by McCants Development Company, Inc. Indeed, while the decedent's *interest* in that corporation was certainly a part of the estate, the Cordelia Lane residence was, for a period of time following the Decedent's death, owned by the corporation itself and not the estate. We would not dispute that Ms. McCants was permitted during this time to act as any other shareholder with respect to the decedent's shares in McCants Development Company, Inc., including voting, selling, or buying shares, *see* 2 Jack W. Robinson, Sr., et al., *Pritchard on the Law of Wills and Administration of Estates* § 631 (6th ed. 2007), but this right to exercise shareholder rights did not, in our view, allow Ms. McCants to access the estate's assets in relation to the corporation's assets. For this reason, we find no error in the trial court's disallowance of the expenses that Ms. McCants incurred while the residence was not an asset of the estate.

## CONCLUSION

In light of the foregoing discussion, we conclude that the trial court's order should be reversed in part, affirmed in part, and modified consistent with our discussion herein. The expenses for the Cordelia Lane residence that were incurred during the period that the residence was titled in the name of the estate were reasonably paid out of the estate account. Although the disallowance of these expenses was in error, we take no issue with the rest of the expenses disallowed by the trial court. This case is remanded to the trial court for the entry of a modified order consistent with this Opinion and for such further proceedings as may be necessary and consistent with our direction herein.

_____
ARNOLD B. GOLDIN, JUDGE